IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAUREEN SIMONS      *
     *
    v.      *     Civil Case No. RDB-17-1837
     *
COMMISSIONER, SOCIAL SECURITY[1]      *
     *
*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF NO. 4]. I have considered the parties' cross-motions for summary judgment and Ms. Simons's Response. [ECF Nos. 17, 18, 21]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Court deny Ms. Simons's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Simons applied for Disability Insurance Benefits ("DIB") on November 5, 2012, alleging a disability onset date of June 1, 2012. (Tr. 181-87). Ms. Simons subsequently amended her alleged onset date to November 1, 2012. (Tr. 47). Her application was denied initially and on reconsideration. (Tr. 93-103, 104-116, 119-22, 124-25). An Administrative Law Judge ("ALJ") held a hearing on January 13, 2016, at which Ms. Simons was represented by

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

counsel. (Tr. 41-84). Following the hearing, the ALJ determined that Ms. Simons was not disabled within the meaning of the Social Security Act. (Tr. 16-40). The Appeals Council ("AC") denied Ms. Simons's request for further review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Simons suffered from the severe impairments of "obesity, lumbar degenerative disc disease, asthma, chronic obstructive pulmonary disease (COPD), hypertension, degenerative joint disease, obstructive sleep apnea, plantar fasciitis, anxiety disorder, depressive disorder, and attention deficit hyperactivity disorder." (Tr. 21). Despite these impairments, the ALJ determined that Ms. Simons retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders or scaffolds; can incidentally climb ramps and stairs to get to or from the workstation; can occasionally stoop; cannot kneel crouch, crawl, balance, or use foot controls; can tolerate occasional exposure to atmospheric conditions, weather, extreme cold and heat, humidity, and wetness; and cannot tolerate exposure to hazards such as unprotected heights and moving mechanical parts. The claimant can perform simple, routine, and repetitive tasks, but not those done at a production rate pace as in an assembly line where each task must be completed in a fixed time. She can make simple work-related decisions; can tolerate only occasional changes in a routine work setting; and time off task during the workday can be accommodated by normal breaks.

(Tr. 25). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Simons could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 34-35).

On appeal, Ms. Simons raises three arguments, including that: (1) the ALJ failed to consider the medical opinion of her treating pain management physician, Dr. Sandeep Sherlekar; (2) the VE's testimony is not consistent with the *Dictionary of Occupational Titles* ("DOT"); and (3) the ALJ failed to provide substantial evidence to support his rejection of a treating physician's recommended limitations. Pl. Mot. 17-21. Each argument lacks merit for the

reasons set forth below.

First, Ms. Simons contends that the ALJ erred by failing to discuss the December 21, 2011 medical opinion of her longstanding treating pain management physician, Dr. Sherlekar. Pl. Mot. 15, 18; *see* (Tr. 332-33) (December 21, 2011 medical report, stating that "PT MAY NOT LIFT >10 lbs. PT NO PROLONGED STANDING/SITTING. NO STOOPING, STRAINING, BENDING OR CLIMBING."). The ALJ, however, is "not required to discuss evidence 'that is neither significant nor probative,' and medical opinions predating the alleged onset date 'are of limited relevance.'" *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) (internal citations omitted); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.") (citation omitted); *Grimm v. Comm'r, Soc. Sec. Admin.*, Civil Case No. SAG-15-3403, 2016 WL 6651300, at *2 (D. Md. Nov. 10, 2016) (holding that the ALJ failed to support his decision with substantial evidence when the "ALJ's opinion rest[ed] almost exclusively on the evidence predating [the onset date]"); *Gullace v. Astrue*, Civil Action No. 1:11cv0755 (TSE/JFA), 2012 WL 691554, at *24 (E.D. Va. Feb. 13, 2012) (rejecting the claimant's argument that the ALJ erroneously failed to discuss certain medical evaluations on the basis that "both evaluations took place long before plaintiff's alleged onset date . . . and as such need not be considered"). The ALJ in the instant case was not required to discuss Dr. Sherlekar's medical opinion, which predated Ms. Simons's alleged onset date by nearly one year.

Additionally, the cases cited by Ms. Simons are not persuasive. *See* Pl. Reply 2-3. Ms. Simons contends that, in *Young v. Commissioner, Social Security Administration*, MJG-17-0375, 2017 WL 4642011 (D. Md. Oct. 16, 2017), this Court "agreed" with the plaintiff's argument that remand was required in part because of the ALJ's failure to assign weight to the State agency

doctor's medical opinion. *See* Pl. Reply 2. Unlike the instant case, however, the medical opinion at issue in *Young* did not predate the plaintiff's alleged onset date. *See* (Tr. 85-93), *Young*, 2017 WL 4642011, at *2. Moreover, this Court did not hold that the ALJ's failure to discuss the medical opinion required remand, but instead observed that "[t]here are many other errors alleged or evident in the ALJ's opinion, including . . . the failure to assign weight to [the State agency doctor's] medical opinion." *Young*, 2017 WL 4642011, at *2. Ms. Simons's reliance on *Young* is therefore misplaced.

Even assuming that the ALJ erred in failing to discuss Dr. Sherlekar's medical opinion, such error would be harmless. Most notably, Ms. Simons has not identified or cited to any evidence in the record to suggest that the ALJ's evaluation of Dr. Sherlekar's opinion would have resulted in additional RFC limitations. Thus, in light of the evidence of record, remand is not warranted on this basis.

Turning to her next argument, Ms. Simons argues that the ALJ failed to resolve the apparent conflict between her RFC limitation to "simple, routine, and repetitive tasks" and "simple work-related decisions" and the VE's testimony that she could perform the job requirements of an order clerk, charge account clerk, and surveillance system monitor. Pl. Mot. 18-19. Specifically, Ms. Simons contends that her RFC limitations prevent her from performing jobs that require a reasoning level of three ("Reasoning Level 3"). *See, e.g.*, Order Clerk, Food and Beverage, *Dictionary of Occupational Titles*, DICOT 209.567-014 (G.P.O.), 1991 WL 671794 (1991) (requiring Reasoning Level 3 and Specific Vocational Preparation Level 2); Charge-Account Clerk, *Dictionary of Occupational Titles*, DICOT 205.367-014 (G.P.O.), 1991 WL 671715 (1991) (same); Surveillance-System Monitor, *Dictionary of Occupational Titles*, DICOT 379.367-010 (G.P.O.), 1991 WL 673244 (1991) (same). According to the DOT,

4

Reasoning Level 3 requires the claimant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. . . . [and] [d]eal with problems involving several concrete variables in or from standardized situations." *See, e.g.*, Order Clerk, Food and Beverage, *Dictionary of Occupational Titles*, DICOT 209.567-014, 1991 WL 671794 (1991). In contrast, a reasoning level of two ("Reasoning Level 2") requires the claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations."

While the Fourth Circuit has not yet addressed this particular issue,[2] other circuits are divided on the issue of whether there is an apparent conflict between a job requirement of Reasoning Level 3 and an RFC limitation to "simple, routine, and repetitive tasks" and "simple, work-related decisions." The Tenth and Ninth Circuits have held that a claimant's limitations to "simple instructions" or "simple, repetitive tasks" is inconsistent with Reasoning Level 3 requirements. *See, e.g.*, *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (holding that remand was required on the basis that the ALJ failed to reconcile the apparent conflict between the claimant's limitation to "understanding, remembering, and carrying out simple instructions" and Reasoning Level 3 jobs); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("Today, we join the Tenth Circuit and hold that there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning."). On the other hand, the Seventh and Eighth Circuits have found that there is no apparent conflict between a limitation to "simple tasks" and Reasoning Level 3 jobs. *See, e.g.*, *Terry v. Astrue*, 580 F.3d

---

[2] As Ms. Simons concedes, the Fourth Circuit's holding in *Henderson v. Colvin*, 643 F. App'x 273 (4th Cir. 2016), is inapplicable to the instant case. In *Henderson*, the Fourth Circuit held that "there is an apparent conflict between an RFC that limits [the plaintiff] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." 643 F. App'x at 277. Unlike in *Henderson*, the instant case does not involve any RFC limitations related to one- or two-step instructions.

5

471, 478 (7th Cir. 2009) (per curiam) (holding that there was no apparent conflict between the claimant's RFC limitation to "simple" work and Reasoning Level 3 jobs); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (holding that there was no apparent conflict between the claimant's inability to perform complex work and Reasoning Level 3 jobs when the jobs identified by the VE "[we]re both classified as unskilled and so do not appear to be 'complex'"); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (holding that the claimant's limitation to "simple, concrete instructions" did not preclude her from working as a cashier, despite its Reasoning Level 3 job requirement, based on the claimant's past work experience as a cashier "in combination with the absence of any evidence showing any mental deterioration").

Several district courts within the Fourth Circuit have held that there is no apparent conflict between Reasoning Level 3 jobs and RFC limitations to "simple, routine tasks" or "simple decisions." *See, e.g.*, *Johnson v. Comm'r, Soc. Sec. Admin.*, Civil Action No. ADC-17-1819, 2018 WL 2248412, at *10-11 (D. Md. May 16, 2018) (holding that there was no apparent conflict between the claimant's RFC limitation to "simple, routine, repetitive tasks" and Reasoning Level 3 jobs while noting that "this Court has consistently found that reasoning levels of two or three are consistent with limitations to simple instructions."); *Clarkson v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG -11-631, 2013 WL 308954, at *1-2 (D. Md. Jan. 24, 2013) (holding that there is "no inherent inconsistency" between the claimant's RFC limitation to "low concentration, low memory and simple routine work" and Reasoning Level 3 jobs); *but see Halpern v. Colvin*, Civil No. TDC-14-2538, 2016 WL 429965, at *10 (D. Md. Feb. 4, 2016) (holding that, although "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," the ALJ's failure to reconcile this apparent conflict was harmless because the VE identified other jobs consistent with the

6

claimant's RFC) (citing *Zavalin*, 778 F.3d at 847).

After reviewing the relevant case law and the particular facts of this case, I agree with the rationale espoused by the Seventh and Eighth Circuits. Moreover, I conclude that, here, the ALJ did not fail to resolve any apparent conflict between Ms. Simons's RFC mental limitations and the VE's testimony. Indeed, Ms. Simons offers nothing more to support her position that such an apparent conflict exists beyond simply asserting that, "under [Reasoning Level 3], the employee has to be able to handle involved instructions." Pl. Mot. 19. However, nothing in the job descriptions presented here requires involved instructions. In fact, the jobs cited by the VE require a Specific Vocational Preparation ("SVP") level of 2 and, therefore, are all unskilled. *See* Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000).

Moreover, based on the ALJ's reasoning and the evidence of record, Ms. Simons's limitations do not conflict with the job requirements set forth by Reasoning Level 3. For example, the ALJ observed that Ms. Simons "drives, shops, reads, and does crossword puzzles," and "can also manage her finances." (Tr. 24); *see* (Tr. 225-26) (Ms. Simons's function report, in which she reported that she is able to pay bills, count change, handle a savings account, and use a checkbook/money orders, and "like[s] reading and watching T.V. [and] sometimes . . . will do a crossword puzzle"). The ALJ also discussed and cited to Ms. Simons's psychological testing results, which reflected average visual-spatial reasoning skills, verbal comprehension abilities, and short-term memory for auditory input, as well as "superior verbal learning and memory ability." (Tr. 24) (citing Tr. 608). Furthermore, the ALJ assigned great weight to the opinion of consultative examiner, Dr. Mikhael Taller, who observed that Ms. Simons's "thought processes were goal-directed and coherent. . . . [,] [n]o loosening of associations or flight of ideas was seen. . . . [,] [and] [s]he was able to abstract the proverb, 'Never cry over spilled milk.'" (Tr. 612-13).

7

Thus, the ALJ did not fail to identify any conflicts between the VE's testimony and the DOT.

Finally, Ms. Simons argues that the ALJ erroneously failed to include a "No Stooping No Bending" RFC limitation, as suggested by her treating physician, Dr. Howard Farrington. Pl. Mot. 22. Social Security regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating source's medical opinion is not assigned controlling weight, the ALJ should consider the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship, including its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. *Id.* §§ 404.1527(c), 416.927(c).

In the instant case, the ALJ assigned "some" weight to the medical opinions of Dr. Farrington, after considering the medical records and Ms. Simons's testimony. (Tr. 30-31). Specifically, the ALJ "afford[ed] more weight to the lifting and carrying limitations than to the sitting limitation of four hours and extreme postural limitations, which are not consistent with the record as a whole, [Ms. Simons's] level of treatment, or activities of daily living." (Tr. 31). In rejecting Dr. Farrington's suggested "no bending/no stooping" limitation, the ALJ discussed and cited to medical records, including a December, 2011 MRI revealing "only minimal displacement of the S1 nerve root; mild to moderate degenerative disc disease; and trace facet effusion." *Id.*; *see* (Tr. 335-36). Moreover, Ms. Simons's argument that the ALJ mischaracterized her MRI report lacks merit. The ALJ comprehensively reviewed the MRI

8

findings in his narrative discussion, as well as in his evaluation of Dr. Farrington's opinions. *See* (Tr. 27-28, 30-31). The ALJ, for example, observed that "[a] December 2011 MRI of the lumbar spine showed a *new right paracentral disc herniation* at L5-S1, *which minimally displaces the right SI nerve root*; mild to moderate degenerative disc disease at L1-2 with new endplate edema, which is likely discogenic; trace facet effusions in the lumbar spine; and a new 6 mm right extra spinal synovial cyst at L3-4." (Tr. 27-28) (emphasis added). The ALJ also cited to various treatment records and examination findings of "normal gait, tone, strength, and reflexes." (Tr. 31); *see, e.g.*, (Tr. 343-44); (Tr. 350-51). Based on the record, the ALJ provided a thorough explanation for the assignment of partial weight to Dr. Farrington's opinions.

Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (citation omitted). Here, the ALJ adequately supported his findings, including his assignment of partial weight to Dr. Farrington's suggested "no bending/no stooping" limitation.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 18];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 17];

3. the Court AFFIRM the SSA's decision under sentence four; and

4. the Court order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within

fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated:  July 13, 2018                                                         /s/
                                                                         Stephanie A. Gallagher
                                                                         United States Magistrate Judge